IN THE MATTER OF THE 1978 PASSAIC COUNTY BUDGET
RELATING TO JUVENILE AND DOMESTIC RELATIONS
COURT.

Superior Court of New Jersey
Appellate Division

Submittted November 13, 1978—Decided February 6, 1979.

Before Judges CONFORD, PRESSLER and KING.

Mr. *Martin Verp*, Passaic County Counsel, attorney for appellants (Mr. *James J. Convery*, Assistant County Counsel, on the brief).

Mr. *John J. Degnan*, Attorney General of New Jersey, attorney for respondent (Ms. *Erminie L. Conley*, Assistant Attorney General, of counsel and on the brief).

PER CURIAM. This appeal arises from a challenge to the validity of an order by the Assignment Judge of Passaic County, issued pursuant to *R.* 1:33–3 directing the County of Passaic to provide certain funds deemed necessary to implement the juvenile and domestic relations intake service program and the child placement review program. The portion of the order involving the child placement program was subsequently rescinded and will not be dealt with herein.

Prior to 1978 juvenile intake service programs were conducted and voluntarily financed by several counties, including Passaic. In June 1977 the Supreme Court adopted regulations mandating state-wide implementation of an intake service program in the Juvenile and Domestic Relations

Courts. Such program was required to be implemented in each county by September 1978. The program includes the monitoring of all admissions of juveniles to detention or shelter facilities, reviewing all complaints against juveniles, recommending to the court whether the complaint should be diverted from the court system and referred to intake conference or juvenile conference committees, and scheduling intake conferences. In addition, the program encompasses providing assistance to parties in domestic relations matters by scheduling conferences and attempting to resolve the disputes by consent. The staff of the Assignment Judge of Passaic County estimated the cost of the program for 1978 at $152,099. The county does not challenge the reasonableness of that figure.

After a hearing on order to show cause to the board of freeholders the assignment judge directed the board to provide $150,000 for the intake service program. This appeal is from that order.

It is entirely clear that the juvenile intake service program is integral to the operation and functioning of the Juvenile and Domestic Relations Courts. A broad spectrum of legislation renders the cost of operation of those courts and their supporting services the obligation of the counties. *N. J. S. A.* 2A:4–4, 10, 13, 13.1; *N. J. S. A.* 2A:168–8; *N. J. S. A.* 9:10–3; *N. J. S. A.* 9:11–8; *N. J. S. A.* 9:12–1; *N. J. S. A.* 9:12A–1; and see *Bonnet v. State,* 155 *N. J. Super.* 520 (App. Div. 1978) aff'd 78 *N. J.* 325 (1978). The expense of operation of the juvenile and domestic relations intake service can reasonably be considered part of the costs of administering the juvenile and domestic relations justice system and therefore allocable to the counties. See *State v. Rush,* 46 *N. J.* 399 (1966) ; *cf. In re Application of Alfred,* 137 *N. J. Super.* 20 (App. Div. 1975).

If the cost of the intake service program is as a matter of law allocable to the counties, as we have held, and a particular county refuses voluntarily to fund it, the responsibility for administrative enforcement of the obligation,

under our judicial system, falls upon the assignment judge of the county as the chief judicial and administrative agent of the judiciary in the county. See *In re Court Reorganization Plan of Hudson Cty.,* 161 *N. J. Super.* 483, 493 (App. Div. 1978) aff'd o. b. 78 *N. J.* 498 (1979). In that case this court held that the assignment judge of a county had the power and authority, ancillary to his status as administrative agent of the Supreme Court for conducting administration of the courts in the county, to direct a recalcitrant board of freeholders to defray the expense of reasonable salaries fixed by the judge for those county employees attached to the courts whom he chose to designate as his assistants. The power was held to be inherent in the court and in its administrative agent. 161 *N. J. Super.* at 491, 493; *R.* 1:33–3(a).

The county contends that absent express legislative directions for the counties to assume the expense of the intake service program the courts are without power to impose it on them. We find the argument to lack merit. First, although there is no express legislative assignment of the expense, it is fairly to be implied from the statutes cited above. Second, even were there no legislative allocation of the expense, since the intake service program is an integral part of the juvenile and domestic relations justice system, for the administration of which the Supreme Court has exclusive authority, the judiciary has the inherent power to order it financed by an appropriate source. See authorities cited in the *Hudson County* case, *supra,* 161 *N. J. Super.* at 491, 492; *cf. Passaic Cty. Probation Officers Ass'n v. Passaic Cty.,* 73 *N. J.* 247, 251–255 (1977); Annotation, 59 *A. L. R.* 3d 569 (1974).

Judgment affirmed.